134 P.3d 1203 (2006)
132 Wash.App. 878
STATE of Washington, Respondent,
v.
Anthony Eugene WHITFIELD, Appellant.
No. 32655-8-II.
Court of Appeals of Washington, Division 2.
May 16, 2006.
*1207 Peter B. Tiller, The Tiller Law Firm, Centralia, WA, for Appellant.
James C. Powers, Thurston County Prosecuting Attorney Ofc., Olympia, WA, for Respondent.

PART PUBLISHED OPINION
HOUGHTON, P.J.
¶ 1 Anthony Whitfield appeals from his conviction of 2,137 months' confinement on 17 counts of first degree assault with sexual motivation, 2 counts of witness tampering, and 3 counts of no-contact order violations. He raises various constitutional and statutory arguments. We affirm.

FACTS
¶ 2 Whitfield learned that he had HIV (human immunodeficiency virus) in April 1992, while incarcerated in Oklahoma. On April 20, 1995, he wrote: "My family is aware of my current medical status and have been since April of 1992."[1] Exhibit 10A.
¶ 3 In a memorandum dated April 25, 1995, a psychologist at the Howard McLeod Correctional Center stated: "[Whitfield] was diagnosed H.I.V. positive while incarcerated at Dick Conner Correctional Center. Reportedly, he contracted the virus through non-consensual sex while incarcerated." Exh. 10 (Interoffice Memorandum). Whitfield's case manager also wrote: "Whitfield is well aware of the consequence of his disease and this seems to frighten him. If he becomes a *1208 threat to the public it will not be because of ignorance." Exh. 10B. After being released from prison in 1995, Whitfield moved to Washington in 1999 and later had multiple sexual encounters with 17 women. He fathered three children with three different women.
¶ 4 During more than a thousand sexual liaisons involving oral, vaginal, and sometimes anal sex, Whitfield rarely wore a condom, even when asked to. And he never informed any of his partners that he had been diagnosed HIV-positive. When asked about his sexually transmitted disease status, he would deny having any disease or would state that he had tested negative. At least five of the 17 women became HIV-positive or ill with Acquired Immune Deficiency Syndrome (AIDS) after having sex with Whitfield.
¶ 5 From time to time during this period, Whitfield made comments about HIV. On one occasion, he asked his sex partner's friend, a home care nurse, whether she cared for people sick with HIV or AIDS. When she replied that she did not, Whitfield stated that if he had HIV, he would infect as many people as he could. And while talking with another sex partner and her friend, Whitfield stated that if he had HIV, he would give it to as many people as possible.
¶ 6 Dr. Diana Yu, the Thurston County Public Health Officer, first became aware of Whitfield in 2002, when a person diagnosed with AIDS named him as a sex partner. Dr. Yu's office tried unsuccessfully to locate Whitfield at that time.
¶ 7 In March 2003, another woman diagnosed with AIDS named Whitfield as her only sex partner. Diana Johnson, a supervisor of the HIV unit,[2] then located and interviewed Whitfield in May. Johnson met with Whitfield in an Olympia parking lot and tested him for HIV.
¶ 8 Upon receiving the results, Johnson tried to reach Whitfield either at his home and by calling his cellular telephone, but she was initially unable to contact him. On August 1, Johnson contacted Whitfield by telephone and met with him at the Health Department. When she told him that the test results indicated that he was HIV-positive, Whitfield broke into tears. Using a standard HIV post-test counseling form, Johnson then explained to Whitfield about what he needed to do to avoid infecting others, which included notifying all his sexual partners of his HIV status and using condoms to reduce the risk of infection. At the end of the counseling, Whitfield signed the form.
¶ 9 In December 2003, Dr. Yu learned that a third individual diagnosed with AIDS named Whitfield as a sex partner. Dr. Yu contacted a Thurston County deputy prosecutor. On March 11, 2004, Dr. Yu signed a Health Officer Order brought under RCW 70.24.024 (cease and desist order).
¶ 10 The next day, Johnson served Whitfield with the cease and desist order. The cease and desist order required Whitfield to submit names and information about all of his sexual partners to the Health Department. It also ordered Whitfield not to engage in any activity that may involve exchange of vaginal fluid or semen and to inform all of his sexual partners that they may have been exposed to HIV. Dr. Yu then drafted a declaration under RCW 70.24.034 and sent it to the deputy prosecutor to aid the prosecutor in detaining Whitfield.
¶ 11 On March 24, 2004, Detective Paul Lower went to Whitfield's residence to execute a search warrant. The detective encountered Whitfield as he loaded household goods into a U-Haul truck. Detective Lower then arrested Whitfield for first degree assault. The next day, the detective saw Whitfield at the jail. Whitfield admitted to Detective Lower that he had had multiple sexual contacts with eight women after his counseling with Johnson in August 2003. According to Detective Lower, Whitfield also admitted that he had discarded the post-HIV counseling documents.
¶ 12 On March 25, the Thurston County Superior Court issued a no-contact order prohibiting Whitfield from contacting B.S., one of his former sexual partners. Whitfield signed the order, indicating that he received a copy of it. Whitfield, however, called B.S. *1209 from the jail on March 29 and 31, and April 8. During the calls, Whitfield tried to persuade B.S. to testify that he had told her about his HIV status.
¶ 13 On October 28, 2004, the State, in its sixth amended information,[3] charged Whitfield with 17 counts of first degree assault with sexual motivation, in violation of RCW 9A.36.011(1)(b) and RCW 9.94A.835; 3 counts of witness tampering, in violation of RCW 9A.72.120(1)(a); and 3 counts of violating a no-contact order, in violation of RCW 26.50.110(1). Fourteen of the 17 first degree assault charges, the three witness tampering charges, and the three no-contact order violation charges included a domestic violence element of RCW 10.99.020.
¶ 14 After Whitfield waived his right to a jury trial, a bench trial ensued. At trial, Dr. Yu testified that medical science currently cannot cure HIV or AIDS and that HIV eventually leads to AIDS. She also stated that the statistical risk of a female getting infected by an unprotected vaginal intercourse with an HIV-positive male is four percent but that science cannot predict who will become infected and who will not.
¶ 15 Dr. Mark Whitehill, a clinical psychologist and a certified sex offender treatment provider, testified on Whitfield's behalf. He said, "I've found no evidence, psychologically, that [Whitfield's] assaultive conduct was intentional. Hence, it seems to me a diminished capacity defense is appropriate." Report of Proceedings (Trial) (RP) at 795. Dr. Whitehill also testified that Whitfield admitted knowing that he was HIV-positive since 1992.
¶ 16 The court found Whitfield guilty as charged on all counts except one count of witness tampering. The court ruled:
For a person prosecuted for Assault in the First Degree by exposing another to HIV, it does not matter whether the exposure resulted in transmission of the virus. Neither does it matter whether the other person was already infected with the virus from another source.
I find that each exposure of HIV by unprotected penile-vaginal intercourse encompasses a risk of transmission of the virus measured at approximately 4 percent. . . . While each single act of exposure carries a transmission risk of 4 percent, and while the risk of transmission does not increase for any particular act of exposure over time, repeated acts of exposing the same person to HIV increased the risk that transmission will occur during one of the repeated acts in a mathematical progression. Thus, 25 or more acts of exposing a person to HIV increases the risk that at least one act will transmit the virus to something near 100 percent.
RP at 907-08. After carefully analyzing all the evidence, the court concluded that Whitfield "intended to expose" all 17 victims to HIV. RP at 929. The court also stated, "I further find that all of the acts in Counts 1 through 17 involved a domestic violence relationship. I further find that all acts in Counts 1 through 17 were committed with sexual motivation." RP at 930.
¶ 17 At sentencing, the court distinguished the following three categories of victims from the rest: (1) victims of unprotected sex after Whitfield received the cease and desist order, (2) victims who have become HIV-positive, and (3) victims who have children with Whitfield. Based on these categories, the court imposed a maximum sentence within the standard range for count I (277 months based on Whitfield's offender score of 8); and counts II, III, VI, VIII, IX, XV, and XVI (123 months for each count). The court imposed a sentence of 111 months for each of the remaining counts, which is above the midpoint of the standard range but lower than the maximum for each count. The court ordered all of the assault sentences to be served consecutively under RCW 9.94A.589.[4]
*1210 ¶ 18 The court then imposed a standard range sentence of 60 months, to be served concurrently, for the two witness tampering counts, and 365 days, also to be served concurrently, for the three no-contact order violation counts. The sentence totaled 2,137 months of confinement (178.08 years).
¶ 19 Whitfield appeals.

ANALYSIS

SPECIFIC AND GENERAL STATUTES
¶ 20 Whitfield first contends that the State erred by proceeding under RCW 9A.36.011(1)(b) instead of RCW 70.24.024,.034,[5] and .080, because chapter 70.24 RCW and RCW 9A.36.011 are concurrent statutes. According to Whitfield, chapter 70.24 RCW is a specific statute whereas RCW 9A.36.011(1)(b) is a general one and, as a result, chapter 70.24 RCW preempts RCW 9A.36.011(1)(b), requiring the State to apply it before RCW 9A.36.011(1)(b).
¶ 21 We addressed an identical argument in State v. Stark, 66 Wash.App. 423, 832 P.2d 109 (1992). There, on learning that Stark, who was HIV-positive, engaged in unprotected sexual activities even after a cease and desist order, a county health officer contacted the county prosecutor to seek aid in obtaining judicial enforcement of the cease and desist order under RCW 70.24.034. Stark, 66 Wash.App. at 426-27, 832 P.2d 109. The prosecutor instead asked the health officer to file a police report. The State charged Stark with three counts of second degree assault under RCW 9A.36.021. Stark, 66 Wash.App. at 427, 832 P.2d 109. A jury found him guilty of one count, and the trial court found him guilty of the two other counts. Stark, 66 Wash.App. at 426, 832 P.2d 109.
¶ 22 On appeal, Stark argued that "RCW 70.24 preempted the more general provisions of RCW 9A.36.021(1)(e)." Stark, 66 Wash.App. at 438, 832 P.2d 109. We rejected this argument and noted that "Stark misapplies the rule regarding general and specific statutes. While provisions of a more recent specific statute prevail in a conflict with a more general predecessor, this rule applies only if the statutes deal with the same subject matter and the conflict cannot be harmonized." Stark, 66 Wash.App. at 438, 832 P.2d 109. We also stated:
While civil remedies also existed in the present case, prosecutors have an obligation to enforce criminal laws. RCW 36.27.020. According to the trial court finding and the jury verdicts, Stark committed a felony by intentionally exposing his victims to HIV. While providing a potential civil remedy, nothing in RCW 70.24 precludes the prosecutor from choosing to file criminal charges rather than first exhausting the available civil remedies. The exercise of prosecutorial discretion on whether to criminally charge someone involves a number of considerations, not the least of which is the public interest.
Stark, 66 Wash.App. at 431-32, 832 P.2d 109 (citing State v. Judge, 100 Wash.2d 706, 713, 675 P.2d 219 (1984)).
¶ 23 Here, Whitfield fails to offer any reason for us to depart from our decision in Stark. Nothing requires the State to exhaust civil enforcement measures under chapter 70.24 RCW before enforcing a criminal statute.
*1211 ¶ 24 Moreover, RCW 70.24.080[6] is not concurrent with RCW 9A.36.011 because a person can violate the former without violating the latter. The essential test in determining whether two statutes are concurrent is whether a violation of the special statute always constitutes a violation of the general statute. State v. Shriner, 101 Wash.2d 576, 580, 681 P.2d 237 (1984). Because one can violate a provision of chapter 70.24 RCW or a health officer order without intending to inflict great bodily harm, an element of first degree assault, Whitfield's argument fails. See RCW 9A.36.011.

EQUAL PROTECTION
¶ 25 Whitfield next contends that prosecuting him under RCW 9A.36.011(1)(b) violated the equal protection clause of the Fourteenth Amendment to the United States Constitution and article I of the Washington Constitution. Specifically, Whitfield challenges the constitutionality of RCW 9A.36.011(1)(b) on the basis that
the statute authorizes the prosecution of persons who are HIV positive but does not prohibit the intentional transmission of other harmful, sexually transmitted diseases such as herpes, gonorrhea, and syphilis. . . and . . . prosecution for first degree assault results in substantially greater punishment than under RCW 70.24.080.
Appellant's Br. at 31-32. He asserts that RCW 9A.36.011(1)(b) creates a suspect or semi-suspect class and that the statute cannot withstand strict or intermediate scrutiny.[7]
¶ 26 In an equal protection analysis, we must first decide which standard of judicial review applies. Convention Ctr. Coalition v. City of Seattle, 107 Wash.2d 370, 378, 730 P.2d 636 (1986). The strict scrutiny test applies when the allegedly discriminatory classification affects a suspect class or threatens a fundamental right. State v. Manussier, 129 Wash.2d 652, 672-73, 921 P.2d 473 (1996), cert. denied, 520 U.S. 1201, 117 S.Ct. 1563, 137 L.Ed.2d 709 (1997). The intermediate scrutiny test applies where strict scrutiny is not mandated, but where important rights or semi-suspect classifications are affected. Manussier, 129 Wash.2d at 673, 921 P.2d 473. And the rational basis test applies if a statutory classification does not involve a suspect or semi-suspect class and does not threaten a fundamental right. Manussier, 129 Wash.2d at 673, 921 P.2d 473. RCW 9A.36.011(1)(b) does not create a suspect or a semi-suspect class because it does not subject persons with HIV to unequal treatment.
¶ 27 Under RCW 9A.36.011(1), "[a] person is guilty of assault in the first degree if he or she, with intent to inflict great bodily harm. . . (b) Administers, exposes, or transmits to or causes to be taken by another, poison, the human immunodeficiency virus as defined in chapter 70.24 RCW, or any other destructive or noxious substance."
¶ 28 As the State correctly points out, "[t]he basis of criminal culpability under this statute is not who a person is or what that person's condition is, but rather what the person does." Resp't's Br. at 43. That is, "[a] non-infected individual who injected HIV-infected blood into another person with the intent to inflict great bodily harm would be just as guilty of this offense as an HIV-infected person who exposed another person to the virus through the act of unprotected sexual intercourse with the intent to inflict great bodily harm." Resp't's Br. at 43-44. Because the statute applies equally to HIV-infected persons and non-HIV-infected persons, it does not create a suspect or a semi-suspect class.
¶ 29 Thus, the rational basis test applies.[8] "Under the rational basis test, a *1212 legislative classification will be upheld `unless it rests on grounds wholly irrelevant to the achievement of legitimate state objectives.'" Coria, 120 Wash.2d at 171, 839 P.2d 890 (quoting Omega Nat'l Ins. Co. v. Marquardt, 115 Wash.2d 416, 431, 799 P.2d 235 (1990)). "The burden is on the party challenging the classification to show that it is `purely arbitrary.'" Coria, 120 Wash.2d at 172, 839 P.2d 890 (quoting Omega, 115 Wash.2d at 431, 799 P.2d 235).
¶ 30 Here, the classification under RCW 9A.36.011(1)(b) bears a reasonable relationship to a legitimate state objectiveto stop the transmission of a deadly disease. As Dr. Yu testified and the trial court found, HIV is incurable and shortens the life expectancy of anyone infected. No one can question the State's interest in stopping its spread. Because Whitfield fails to show a purely arbitrary classification, his equal protection argument fails.

PRIVILEGES AND IMMUNITIES
¶ 31 Whitfield also contends that RCW 9A.36.011(1)(b) violates our constitution's privileges and immunities clause because it grants a special privilege or immunity to those with a sexually transmitted disease other than HIV. In making this argument, Whitfield asserts that "our state's privileges and immunities clause should be interpreted. . . more expansively than the federal equal protection guarantee." Appellant's Br. at 44.
¶ 32 Article I, section 12 of the Washington State Constitution provides in part: "No law shall be passed granting to any citizen, class of citizens . . . privileges or immunities which upon the same terms shall not equally belong to all citizens." Our Supreme Court recently held that "the privileges and immunities clause of the Washington State Constitution, article I, section 12, requires an independent constitutional analysis from the equal protection clause of the United States Constitution."[9]Grant County Fire Prot. Dist. No. 5 v. City of Moses Lake, 150 Wash.2d 791, 805, 83 P.3d 419 (2004).
¶ 33 A violation of article I, section 12 occurs only if the law or its application confers a privilege or an immunity to a class of citizens. Grant County, 150 Wash.2d at 812, 83 P.3d 419. "[T]he terms `privileges and immunities' `pertain alone to those fundamental rights which belong to the citizens of the state by reason of such citizenship.'" Grant County, 150 Wash.2d at 812-13, 83 P.3d 419 (quoting State v. Vance, 29 Wash. 435, 458, 70 P. 34 (1902)).
¶ 34 Although the parties agree that all citizens have a fundamental right to the State's protection of their physical safety, Whitfield bears the burden of demonstrating how RCW 9A.36.011(1)(b) unconstitutionally grants immunity. Grant County, 150 Wash.2d at 811, 83 P.3d 419. Washington courts presume the constitutionality of statutes. State v. Hennings, 129 Wash.2d 512, 524, 919 P.2d 580 (1996). "A party challenging the constitutionality of a statute has the heavy burden of proving its unconstitutionality beyond a reasonable doubt." State v. Blank, 131 Wash.2d 230, 235, 930 P.2d 1213 (1997).
¶ 35 Whitfield asserts that "[t]here is no legitimate basis for the State to prosecute persons who transmit HIV while failing to prosecute persons who transmit or expose others to herpes, Chlamydia, genital warts, gonorrhea, syphilis, and other sexually transmitted diseases." Appellant's Br. at 43-44. Whitfield's argument lacks merit because the transmission of these other diseases can result in criminal liability by virtue of chapter 70.24 RCW. See, e.g., RCW 70.24.017(13). For instance, a health officer can issue a cease and desist order regarding a sexually transmitted disease, and any violation of the order could result in a gross misdemeanor. *1213 RCW 70.24.024, .034. Whitfield's argument fails for other reasons as well.
¶ 36 It is axiomatic that "`[t]he legislature is clothed with power well nigh unlimited to define crimes and fix their punishments.'" State v. Feilen, 70 Wash. 65, 70, 126 P. 75 (1912) (quoting State v. Woodward, 68 W.Va. 66, 68, 69 S.E. 385 (1910)). "The power of the legislature to define crimes and prescribe punishments is virtually unlimited. It is the prerogative of the legislature to determine the kinds and severity of punishment appropriate to each offense and to each degree of a given offense." State v. Cook, 26 Wash.App. 683, 686, 614 P.2d 215 (1980). Accordingly, the legislature has the power to subject the intentional transmission of HIV to a more severe penalty than the spread of other sexually transmitted diseases.
¶ 37 Finally, Whitfield fails to show if any of these other diseases will result in great bodily harm equivalent to that caused by HIV. Whitfield's contention that the dangers of these other diseases are "self-evident" and "a priori undesirable" provides an insufficient basis to limit the legislature's power to determine the kinds and severity of punishments. Appellant's Reply Br. at 7; see Cook, 26 Wash.App. at 686, 614 P.2d 215. Whitfield fails to demonstrate that RCW 9A.36.011(1)(b) grants unconstitutional immunity because he relies on an erroneous assumption that all of the sexually transmitted diseases must be punished under a single statuteRCW 9A.36.011.

SUFFICIENCY OF THE EVIDENCE

Standard of Review
¶ 38 Whitfield raises three sufficiency of the evidence arguments. He asserts that insufficient evidence established (1) his intent to inflict great bodily harm, (2) his ability to transmit disease, and (3) witness tampering.
¶ 39 In reviewing the sufficiency of the evidence to support a guilty verdict in a criminal case, we view the evidence in the light most favorable to the State to determine whether any rational fact finder could have found the essential elements of the crime beyond a reasonable doubt. State v. Green, 94 Wash.2d 216, 221, 616 P.2d 628 (1980). In making this determination, we consider circumstantial and direct evidence equally reliable. State v. Delmarter, 94 Wash.2d 634, 638, 618 P.2d 99 (1980). We defer to the fact finder in resolving conflicting testimony and in evaluating the credibility of witnesses and the persuasiveness of material evidence. State v. Carver, 113 Wash.2d 591, 604, 781 P.2d 1308, 789 P.2d 306 (1989).

Intent
¶ 40 Whitfield argues that the State presented insufficient evidence of his intent to inflict great bodily harm. He asserts that the State failed to show that he knew of his HIV status before Johnson notified him on August 1, 2003, or even that he knew how to transmit the disease.
¶ 41 We can infer criminal intent as a logical probability from the facts and circumstances. Delmarter, 94 Wash.2d at 638, 618 P.2d 99. Reviewed in the light most favorable to the State, the evidence at trial proved that Whitfield knew about his HIV status before coming to Washington. That evidence included: (1) Whitfield's April 20, 1995 handwritten letter noting that his family was aware of his medical status since April 1992; (2) Whitfield's Oklahoma case manager's April 25, 1995 memorandum in which he wrote that Whitfield knew the consequences of his disease; (3) the case manager's testimony that the language "medical status" in Whitfield's letter referred to his HIV status; and (4) Dr. Whitehill's testimony that Whitfield had known about his HIV status since 1992.
¶ 42 Whitfield asserts that he did not know that he could transmit HIV through vaginal and oral intercourse because he contracted HIV through nonconsensual anal sex. As noted, the record belies Whitfield's assertion. In April 1995, the case manager wrote, "Whitfield is well aware of the consequence of his disease and this seems to frighten him. If he becomes a threat to the public it will not be because of ignorance." Exh. 10B.
¶ 43 Moreover, Whitfield deliberately lied to all of the victims, telling them that he did not have any sexually transmitted diseases *1214 while insisting that they engage in unprotected sex with him. Whitfield's deception and unprotected sexual activities continued even after the Health Department counseling in August 2003, and after the March 2004 cease and desist order.
¶ 44 Finally, Whitfield sent an email message to one victim stating that he hoped she would get AIDS and, on multiple occasions, told others that if he knew he had HIV he would try to infect as many people as possible. Evidence that Whitfield knew he could transmit HIV through vaginal and oral intercourse meets the standard for sufficiency. The State presented evidence of his intent to inflict great bodily harm.

HIV-Negative Victims
¶ 45 Whitfield next argues that the State failed to present sufficient evidence to convict him of 12 of the first degree assault charges pertaining to victims who tested HIV-negative. He asserts that he was not always capable of transmitting HIV. In making this argument, he relies on Dr. Yu's testimony that a person infected with HIV is not always contagious or capable of transmitting the disease.
¶ 46 Whitfield's argument, however, confuses the elements of the charged crime. Under RCW 9A.36.011(1)(b), "[a] person is guilty of assault in the first degree if he or she, with intent to inflict great bodily harm. . . exposes, or transmits to . . . another . . . the human immunodeficiency virus as defined in chapter 70.24 RCW." (Emphasis added.) Accordingly, as the trial court correctly pointed out, the State had to prove only that Whitfield intentionally exposed the victims to HIV.
¶ 47 According to Dr. Yu, "every incidence of sexual activity would be a period of exposure," although not every exposure would necessarily transmit HIV. RP at 94. Dr. Yu also testified that exposure occurs with any sexual activity that involves vaginal, oral, or anal exchange of bodily fluids as occurs during unprotected sex.
¶ 48 Whitfield knew that he was HIV-positive when he engaged in unprotected sexual activities while deliberately concealing his HIV status. Thus, viewed in the light most favorable to the State, sufficient evidence shows that Whitfield intentionally exposed the 12 HIV-negative victims to the disease.

Witness Tampering
¶ 49 Whitfield also argues that the State failed to present sufficient evidence that he tampered with a witness. He asserts that the evidence does not show his intent to induce a witness to testify falsely because "the conversations were taken out of context and not taken seriously by B.S."[10] Appellant's Br. at 51.
¶ 50 Here, the court found Whitfield guilty of two counts of witness tampering based on his telephone conversations with B.S. on March 31 and April 8. RCW 9A.72.120(1) provides: "A person is guilty of tampering with a witness if he or she attempts to induce a witness or person he or she has reason to believe is about to be called as a witness in any official proceeding . . . to: (a) Testify falsely or, without right or privilege to do so, to withhold any testimony." (Emphasis added.) "A person tampers with a witness if he attempts to alter the witness's testimony." State v. Williamson, 120 Wash.App. 903, 908, 86 P.3d 1221, amended on recon., 131 Wash. App. 1, 2004 WL 614504, 2004 Wash.App. LEXIS 3712 (2004). "A person is guilty of an attempt to commit a crime if, with intent to commit a specific crime, he or she does any act which is a substantial step toward the commission of that crime." RCW 9A.28.020(1).
¶ 51 Whitfield completed a substantial step when he urged B.S. to testify that they had consensual sex after she knew about his HIV status. During the March 31 conversation, Whitfield asked B.S. to testify that she knew about his HIV diagnosis and further told her, "that's probably like the only ticket that I got right now." Exh. 8B at 6. Whitfield also assured B.S. that her testimony would not cause her any problem because she had not *1215 previously testified under oath on this matter. During his April 8 conversation, Whitfield also gave B.S. an example of what she should state in court, "look Judge, hey check it out, Judge I knew we did it. It was consensual. Let my man come home." Exh. 10D at 7.
¶ 52 In light of his conversations with B.S., Whitfield completed the crime of witness tampering when he attempted to induce B.S. to give false testimony. It remains irrelevant whether he succeeded in his attempt. Thus, the State submitted sufficient evidence to convict Whitfield of witness tampering.

CONSENT
¶ 53 Whitfield next contends that the trial court erred by denying him the right to raise a consent defense. He asserts that the victims accepted the risk of contracting a sexually transmitted diseaseincluding HIVby consenting to have sex with someone who maintained a sexually promiscuous lifestyle and who habitually used drugs.
¶ 54 Whitfield relies heavily on State v. Shelley, 85 Wash.App. 24, 28, 929 P.2d 489, review denied, 133 Wash.2d 1010, 946 P.2d 402 (1997), where we held that "consent is a defense to an assault occurring during an athletic contest." By analogizing HIV exposure during a consensual sexual encounter to an assault during a sporting event, Whitfield asserts that "[t]he risk of contracting a gamut of sexually transmitted diseasesincluding HIVis eminently foreseeable and an inherent part of engaging in unprotected sex." Appellant's Br. at 53.
¶ 55 Whitfield's assertion does not persuade us because a person cannot consent unless he or she knows all relevant facts. See Hunter v. Brown, 4 Wash.App. 899, 903, 484 P.2d 1162 (1971) ("logically, an `uninformed' consent is tantamount to no consent"), aff'd, 81 Wash.2d 465, 502 P.2d 1194 (1972); see also United States v. Johnson, 27 M.J. 798, 803-04 (1988) (ruling that the defendant was not permitted to raise the defense of consent where he engaged in consensual unprotected sex without informing his sexual partner that he was HIV-positive).
¶ 56 Here, after carefully analyzing Shelley, the trial court ruled that "the correct inquiry is whether the conduct of defendant constituted foreseeable behavior in the consensual sexual intercourse." RP at 256; see Shelley, 85 Wash.App. at 31, 929 P.2d 489. The court therefore properly concluded that a victim's consent to consensual sex is not a defense to the charged offense hereexposing or transmitting HIV with intent to inflict great bodily harm.
¶ 57 Without determining whether consent may sometimes be a defense to the crime of assault under RCW 9A.36.011(1)(b) and RCW 9.94A.835, we hold that the trial court properly refused to consider a consent defense because Whitfield did not disclose his HIV status to any of the victims. His intentional concealment of his HIV status was not a foreseeable behavior in a consensual sexual intercourse context. See Shelley, 85 Wash. App. at 31, 929 P.2d 489. Moreover, he even lied when some of his victims asked about his disease status.

EXCEPTIONAL SENTENCE
¶ 58 Whitfield further contends that the trial court erred by imposing an exceptional minimum sentence beyond the determinate range on 12 of his assault convictions.[11] He asserts that the court's application of RCW 9.94A.712[12] subjects his sentence to review under Blakely v. Washington, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004) because the Indeterminate Sentence Review Board (Board) can impose additional two-year minimum terms up to the maximum sentence under RCW 9.94A.712. See RCW 9.95.420(3)(a).
¶ 59 Here, the Board can impose additional two-year terms up to life, Whitfield's maximum sentence. But because his minimum *1216 sentence is approximately 178 years, there is no actual probability that he will be subject to the Board's additional minimum sentence. Therefore, we decline to reach this issue. Without determining whether the Board's authority to impose additional terms could violate Blakely, we hold here that, on these facts, the application of RCW 9.94A.712 does not require us to reverse.

JURY WAIVER
¶ 60 Whitfield also argues that he did not waive his right to have a jury determine the sexual motivation and the domestic violence components of his charges when he waived his right to a jury trial. He asserts that there should have been "a warning or notification" about this possibility. Appellant's Reply Br. at 14.
¶ 61 Whitfield's argument does not persuade us because he filed a knowing and voluntary waiver of a jury trial on October 13, 2004. That jury waiver occurred after the State filed the third amended information, wherein he had notice of the sexual motivation and domestic violence components of his charged crimes.

CRUEL AND UNUSUAL PUNISHMENT
¶ 62 Whitfield also argues that his 178.08-year sentence was disproportionate and constitutes a cruel and unusual punishment in violation of article I, section 14 of the Washington State Constitution.[13] We disagree.
¶ 63 Article I, section 14 of the Washington Constitution prohibits cruel and unusual punishment and provides more protection than its federal counterpart. State v. Fain, 94 Wash.2d 387, 392, 617 P.2d 720 (1980). Article I, section 14 protects against sentences that are grossly disproportionate to the crime committed. State v. Morin, 100 Wash.App. 25, 29, 995 P.2d 113, review denied, 142 Wash.2d 1010, 16 P.3d 1264 (2000). "A punishment is grossly disproportionate only if . . . the punishment is clearly arbitrary and shocking to the sense of justice." State v. Smith, 93 Wash.2d 329, 344-45, 610 P.2d 869, cert. denied, 449 U.S. 873, 101 S.Ct. 213, 66 L.Ed.2d 93 (1980).
¶ 64 To determine whether a sentence is grossly disproportionate, we consider the four Fain factors: (1) the nature of the crime, (2) the legislative purpose behind the sentence, (3) the sentence the defendant would receive for the same crime in other jurisdictions, and (4) the sentence the defendant would receive for other similar crimes in Washington. Morin, 100 Wash.App. at 29, 995 P.2d 113. These are merely factors to consider and no one factor is dispositive. State v. Gimarelli, 105 Wash.App. 370, 381-82, 20 P.3d 430, review denied, 144 Wash.2d 1014, 31 P.3d 1185 (2001).
¶ 65 Under the first Fain factor, we consider whether the crime is a violent one and whether it is a crime against a person or property. Morin, 100 Wash.App. at 30, 995 P.2d 113. Here, Whitfield had intercourse with 17 women, repeatedly concealing his HIV status and insisting on unprotected sex. Thus, he committed first degree assault, intentionally exposing victims to HIV. This is a serious and violent offense against a person. See former RCW 9.94A.030(37) (2004). The seriousness of Whitfield's crimes stands in marked contrast to the property crime in Fain.
¶ 66 With regard to the second Fain factor, the legislature expressed its extraordinary concern about the threat of HIV infection when it classified intentional HIV transmission as an assault crime. RCW 9A.36.011(1)(b).
¶ 67 As to the third Fain factor, according to Whitfield's own evidence, at least 22 other states have criminalized intentionally transmitting HIV. Although it is unclear what the sentence would be in each of those jurisdictions, as noted above, this factor is not dispositive.[14]
¶ 68 Finally, regarding the fourth Fain factor, first degree assault with a sexual motivation *1217 is a class A offense and a most serious violent sex offense. See RCW 9A.36.011(1)(b); former RCW 9.94A.030(37). Whitfield asserts that he would be facing a more lenient sentence if he had committed murder. His argument lacks merit because he fails to show how his sentence is so grossly disproportionate to the gravity of the number of his convictions that it constitutes cruel and unusual punishment.
¶ 69 In analyzing this factor in a three strikes case, our Supreme Court noted that "all defendants who are convicted of a third `most serious offense'" receive life sentences without parole. State v. Rivers, 129 Wash.2d 697, 714, 921 P.2d 495 (1996) (citing the Persistent Offender Accountability Act, RCW 9.94A.570). Similarly, courts may sentence defendants to life imprisonment when convicted of multiple serious violent offenses. Here, the court convicted Whitfield of 17 counts of first degree assault with sexual motivation. His sentence compares with the sentence that he would have received for committing a similar number of other violent crimes.
¶ 70 We hold that Whitfield's sentence is not grossly disproportionate to his crime. The court convicted him of intentionally exposing or transmitting a deadly disease to 17 women. The legislature has a right to discourage such behavior and to protect the public from such offenders. Consequently, the sentence does not violate Washington's prohibition of cruel punishment and Whitfield's argument fails.
¶ 71 A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.
We concur: ARMSTRONG and PENOYAR, JJ.
NOTES
[1] Whitfield's case manager at the Howard McLeod Correctional Center testified that this "current medical status" referred to Whitfield's HIV status. Report of Proceedings at 174.
[2] This is an HIV outreach program for HIV prevention and education.
[3] Counts I through XVII, charged first degree assault with sexual motivation; counts XVIII through XX, tampering with a witness; and counts XXI through XXIII, violation of no-contact order. The sixth amended information only changed the dates in counts IV and XIV to comply with the victims' statements. The fifth amended information was filed on October 25.
[4] RCW 9.94A.589 requires serious violent offenses, which include first degree assault, to run consecutively. Former RCW 9.94A.030(37) (2004).
[5] RCW 70.24.034(1) states in part:

When the procedures of RCW 70.24.024 have been exhausted and the state or local public health officer, within his or her respective jurisdiction, knows or has reason to believe, because of medical information, that a person has a sexually transmitted disease and that the person continues to engage in behaviors that present an imminent danger to the public health as defined by the board by rule based upon generally accepted standards of medical and public health science, the public health officer may bring an action in superior court to detain the person in a facility designated by the board for a period of time necessary to accomplish a program of counseling and education, excluding any coercive techniques or procedures, designed to get the person to adopt nondangerous behavior. In no case may the period exceed ninety days under each order. . . . The public health officer shall request the prosecuting attorney to file such action in superior court.
[6] Under RCW 70.24.080, it is a gross misdemeanor to violate a provision of chapter 70.24 RCW, a rule adopted by the State Board of Health, or an order issued by a health officer.
[7] Whitfield also asserts that RCW 9A.36.011(1)(b) should fail even the rational basis test. He advances this argument by simply stating: "The classification of persons suffering from HIV is purely arbitrary." Appellant's Br. at 39. This assertion lacks merit because Whitfield fails to explain why the statute is purely arbitrary. State v. Coria, 120 Wash.2d 156, 172, 839 P.2d 890 (1992).
[8] Further, the rational basis test applies when physical liberty is at issue. State v. Dobbins, 67 Wash.App. 15, 22, 834 P.2d 646 (1992), review denied, 120 Wash.2d 1028, 847 P.2d 481 (1993).
[9] "When determining whether the Washington privileges and immunities clause provides more protection than the United States Constitution, [our Supreme Court has] always compared it with the federal equal protection clause rather than the federal privileges and immunities clause." Grant County, 150 Wash.2d at 805 n. 10, 83 P.3d 419.
[10] Whitfield concedes that he had telephone conversations with B.S. in violation of a no-contact order.
[11] During oral argument, Whitfield also requested a stay until our Supreme Court decides State v. Borboa, 124 Wash.App. 779, 102 P.3d 183 (2004), review granted, 154 Wash.2d 1020, 116 P.3d 398 (2005). We deny this request.
[12] RCW 9.94A.712(5) authorizes the sentencing court to sentence the offender to community custody "for any period of time the person is released from total confinement before the expiration of the maximum sentence."
[13] Whitfield also asserts that the trial court's failure to conduct a proportionality review violated his due process rights. He fails to cite any authority for his assertion that such a review is mandatory. Nevertheless, we note that the trial court carefully considered whether there was "proportionality in sentencing" and ruled his sentence to be proportional in light of the policies of the Sentencing Reform Act of 1981, chapter 9.94A RCW.
[14] Of note, some jurisdictions regard it as attempted murder. See, e.g., Weeks v. State of Texas, 834 S.W.2d 559, 561 (1992) (a jury convicted defendant, who was HIV-positive, of attempted murder for spitting on a prison guard). In any case, life in prison is not disproportionate because Whifield has effectively shortened the life span of at least five victims.