

2016 FEB 29 AM 8: 5

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 72545-9-I |
| Respondent, | ) ) | |
| | ) | DIVISION ONE |
| v. | ) ) | UNPUBLISHED OPINION |
| JAMES STEPHEN HURLEY, III, | ) ) | |
| Appellant. | ) | FILED: February 29, 2016 |
| | ) | |

APPELWICK, J. — Hurley was convicted of witness tampering based on recorded jail calls between him and a witness. Hurley appeals, arguing the evidence was insufficient to sustain his conviction. We affirm.

## FACTS

On December 30, 2013, Nicole Guevarra called 911 from a pay phone to report a domestic violence incident. Guevarra informed the 911 operators that she was from Spokane. She had traveled to Seattle with her husband, James Hurley, in his semi-truck so that he could make a delivery. Guevarra told the 911 operator that Hurley was " 'kicking the crap' " out of her in his truck. Guevarra had bitten Hurley and was able to get away.

When police officers located Guevarra, she was crying and out of breath. Guevarra had visible facial injuries and red marks on her neck. Officers also

located Hurley. Hurley had injuries on his arm and back consistent with bite marks. Officers arrested Hurley. On December 31, 2013, the court issued a domestic violence no-contact order, preventing Hurley from contacting Guevarra. On January 2, 2014, Hurley was charged with assault in the second degree, felony harassment – domestic violence, and unlawful imprisonment.

Between January 5 and January 13, 2014, Hurley called Guevarra several times from jail. The calls were recorded by the King County Jail's recording system. Based on these recorded calls, the State charged Hurley with tampering with a witness.[1] The jury found Hurley guilty of witness tampering. Hurley appeals.

DISCUSSION

Hurley argues that this court must reverse his witness tampering conviction for lack of evidence. The standard of review on a challenge to the sufficiency of evidence is whether, after viewing the evidence in a light most favorable to the State, any rational trier of fact could have found the essential elements of the charged crime beyond a reasonable doubt. State v. Sanders, 66 Wn. App. 878, 889, 833 P.2d 452 (1992).

On appeal, we draw all reasonable inferences from the evidence in favor of the State and interpret them most strongly against the defendant. State v. Andrews, 172 Wn. App. 703, 706-07, 293 P.3d 1203 (2013). In determining whether the necessary quantum of proof exists, the reviewing court need not be convinced of the defendant's guilt beyond a reasonable doubt, but only that

_____

[1] The State also added charges for several misdemeanor violations of the no-contact order.

2

No. 72545-9/3

substantial evidence supports the State's case. State v. Fiser, 99 Wn. App. 714, 718-19, 995 P.2d 107 (2000).

RCW 9A.72.120 outlines the elements of witness tampering:

(1) A person is guilty of tampering with a witness if he or she attempts to induce a witness or person he or she has reason to believe is about to be called as a witness in any official proceeding or a person whom he or she has reason to believe may have information relevant to a criminal investigation or the abuse or neglect of a minor child to:

    (a) Testify falsely or, without right or privilege to do so, to withhold any testimony; or

    (2) Absent himself or herself from such proceedings; or

    (3) Withhold from a law enforcement agency information which he or she has relevant to a criminal investigation or the abuse or neglect of a minor child to the agency.

Neither Guevarra nor Hurley testified at trial. Therefore, the State relied on only the recorded phone calls between Hurley and Guevarra as the evidence to support Hurley's witness tampering conviction. At trial, the jury was provided with a transcript of recorded phone calls between Hurley and Guevarra from January 5, 6, 8, and 13, 2014. And, excerpts of the recorded phone calls were played for the jury.

During closing argument, the State played excerpts of the calls again and highlighted portions of the calls for the jury. First, the State relied on the following excerpt:

HURLEY:    Anyway, though so. So yeah, you gonna (unintelligible). What are you gonna tell her that she recommends—because one of the reasons that they kept me here is 'cause they're sayin' that you

3

know that uh that you were worried about me gettin' out. You know what I mean?

[GUEVARRA]: Yeah.

HURLEY: So. You know. I mean hopefully, that's not a problem no more, right?

[GUEVARRA]: No.

HURLEY: You know hopefully that could be expressed to the . . . .

[GUEVARRA]: Yeah, it will be.

The State cited to this excerpt as an example of Hurley trying to influence what Guevarra says. Then, the State referenced the following excerpts:

HURLEY: Just get me out of here.

[GUEVARRA]: I'm not getting' out. I'm just—I'm tryin to get it—

HURLEY: (Unintelligible).

[GUEVARRA]: through you head—

HURLEY: Get me out of here.

[GUEVARRA]: Huh?

HURLEY: Get me out of here.

[GUEVARRA]: I can't. I can just send that-I can just send that stuff to the advocate, and you know not go to court.

HURLEY: (Unintelligible).

UNKNOWN: (Unintelligible).

HURLEY: I love you—

[GUEVARRA]: They want to nail you. I was like—I was—I was so floored when I seen what your—when they took—she

told me what your charges were. I was like what the fuck.

HURLEY: Yeah, I know. That's what I'm sayin'. Well they're sayin' because that you know—you know—they're sayin' 'cause I—I guess because I uh so you're sayin' that I fuckin' held you hostage in the truck and wouldn't let you out. You know what I mean.

[GUEVARRA]: Well I did, and I said I tried to get out like five times, but you didn't want me out of the truck because the guy that you worked with.

HURLEY: Well maybe (unintelligible) maybe you could just exaggerating that many. You know what I'm sayin'. (Unintelligible).

[GUEVARRA]: No, it was four or five. I remember clearly.

HURLEY: No, you—you're not listenin' to what I'm sayin'.

[GUEVARRA]: Uh, huh.

HURLEY: You know what I mean.

OPERATOR: You have one minute—

HURLEY: You know.

OPERATOR: remaining.

HURLEY: I mean if you want me out, maybe you know. It don't matter. Whatever happens, happens, I love you okay.

[GUEVARRA]: I love you too.

HURLEY: Get me the fuck out of here okay. If you can. If you can't, you can't, whatever. You know what I mean.

The State noted that these were examples of Hurley trying to get Guevarra to change her statement or not go to court. Finally, the State referenced a portion of one additional call:

HURLEY: Yeah. Hey I love you (unintelligible).

5

[GUEVARRA]: I love you too.

HURLEY:     Sorry about all this.

[GUEVARRA]: Me too.

HURLEY:     Okay, You know what I'm sayin'? So you know—you know. I mean worse comes to worst—I mean if they—you know how to do this. We—we've done it before.

[GUEVARRA]: Yeah.

HURLEY:     But this time—hey listen—this time, I'll—I'll go get on some medication when I get out okay.

[GUEVARRA]: Yeah.

HURLEY:     I promise.

In addition, in closing argument, the State noted that Hurley expresses love during the calls multiple times, apologizes several times, and promises to get help for his problems. The State noted that these were all ways Hurley attempted to influence Guevarra into not testifying or changing her story.

Hurley argues that the evidence is insufficient, because it does not show that he ever asked Guevarra to testify falsely, withhold evidence, or absent herself from proceedings. Hurley asserts that although the evidence indicates that he wanted out of jail and wanted Guevarra to do what she could to make it happen, the evidence does not establish witness tampering. Hurley claims that the evidence in his case is like the evidence deemed insufficient in State v. Rempel, 114 Wn.2d 77, 785 P.2d 1134 (1990).

Rempel, who was charged with rape, called the alleged victim witness several times from jail. Id. at 81-82. The witness accepted only two or three of his

6

collect calls. Id. at 81. The witness's testimony about the substance of the phone calls constituted all of the evidence the State used to prove witness tampering at trial. Id. The witness testified that Rempel said that he was sorry, that he would never do it again, and that she was going to ruin his life. Id. She also testified that Rempel asked her to drop the charges. Id. The witness testified that Rempel said basically the same thing in each phone call. Id. at 82.

After he was convicted of witness tampering, Rempel appealed, challenging the sufficiency of the evidence. Id. at 79. The Rempel court noted that the sum of the defendant's attempts were an apology, a statement that "it" was going to ruin his life, and a request that the witness drop the charges. Id. at 83. The court concluded that Rempel's literal words contained no express threat nor any promise of reward. Id. The court continued, stating that an attempt to induce a witness to withhold testimony does not depend upon only the literal meaning of the words used. Id. Rather, the State is entitled to rely also on the inferential meaning of the words and the context in which they were used. Id. at 83-84. But, the Rempel court reasoned that the entire context negated any inference that the request to drop the charge was an inducement to withhold testimony from a later trial. Id. at 84. The court noted that the witness testified that the calls did not concern her and that she did not worry about them—testimony relevant to disproving the State's claim that the context of the words spoken showed an attempt to induce the witness to withhold testimony. Id. The Rempel court concluded that the evidence was insufficient. See id. at 83.

In so holding, the Rempel court distinguished Rempel's case from cases in which the courts found sufficient evidence: State v. Stroh, 91 Wn.2d 580, 582, 588 P.2d 1182 (1979) (defendant asked the witness not to appear at an administrative hearing or alternatively change his testimony) and State v. Wingard, 92 Wash. 219, 221, 158 P. 725 (1916) (defendant promised a reward, made a threat, and urged the witnesses to ignore a subpoena). Id. at 84. Since Rempel, several other Washington courts have found sufficient evidence to support a conviction for witness tampering in other factual contexts. See, e.g., State v. Lubers, 81 Wn. App. 614, 622, 915 P.2d 1157 (1996) (defendant asked a witness who was about to be called to testify to write a letter recanting information that he had given the police as a part of a rape investigation); State v. Whitfield, 132 Wn. App. 878, 897-98, 134 P.3d 1203 (2006) (defendant attempted to induce witness to give false testimony by providing witness examples of how to do so).

Had the phone conversations between Hurley and Guevarra been limited to Hurley's confirmation that Guevarra no longer wanted him to remain in jail and his encouragement that she relay that information, we agree that the evidence would be insufficient under Rempel. But, other portions of the conversations between Hurley and Guevarra rise to a level of inducement not present in Rempel. Like in Lubers, Stroh, and Whitfield, the conversations between Hurley and Guevarra demonstrate that Hurley was actively urging Guevarra—someone who was about to be called as a witness—to change her statement and, therefore, testify falsely. For instance, Hurley insinuated that Guevarra should change her account about the struggle in the truck on the night of the incident, despite

8

Guevarra emphasizing that she knew the facts as she had previously described them to the police were accurate.

Moreover, although Hurley never explicitly told Guevarra not to testify, he was supportive of Guevarra's offer to absent herself from the proceedings and incentivized her to do so. Hurley asked Guevarra to get him out of jail, and she responded that she could refrain from going to court. Hurley responded that he loved her. And, like in Wingard, Hurley later promised Guevarra a reward for her actions. After telling Guevarra that she "know[s] how to do this," Hurley promised Guevarra that he would get on medication when he got out of jail.

Although Hurley's request for Guevarra to change her testimony and Hurley's inducement for her to absent herself from the proceedings were not explicit from the words used, the State may rely on the inferential meaning of the words and the context in which they were used. Rempell, 114 Wn.2d at 83-84. Considering the inferential meaning of words and the context is particularly salient here, because both Hurley and Guevarra knew that they were being recorded and needed to use veiled language.

Moreover, here, the prior relationship between Hurley and Guevarra—an abuser and a victim of domestic violence—is particularly illustrative to provide context for the phone conversations. See Rempel, 114 Wn.2d at 84 ("[W]e consider the entire context in which the words were used, which also includes the prior relationship between defendant and [the witness], and her reaction to the phone calls."). In the light most favorable to the State, it is clear from the phone call transcript that Hurley's abuse was a pattern and that he exercised a certain

amount of control over Guevarra. Hurley noted that they had been in this situation before. And, he promised that "this time" he would go on medication when he got out—implying that there had been previous incidents. At one point, Guevarra noted that she was not going to be the blame for Hurley's problem any longer, implying that Hurley has blamed her for his problems in the past. That Guevarra had remained in a relationship with Hurley and expressed a willingness to help him get out of jail despite his abusive behavior illustrates that Hurley had a certain degree of control over her. Their relationship provides context for the calls and shows Hurley's attempt to control Guevarra yet again. And, unlike the witness in Rempel, Guevarra did not contradict this by testifying at trial that Hurley's calls had no effect on her. In fact, Guevarra did not testify at all.

After viewing the evidence—the content of the recorded jail calls and the context surrounding those conversations—in the light most favorable to the State, we hold that the evidence supports Hurley's conviction for witness tampering.

We affirm.

WE CONCUR: