[No. 23492-1-II.   Division Two.   March 17, 2000.]
THE STATE OF WASHINGTON, *Respondent*, v. STEVEN FISER, *Appellant*.

*Thomas Edward Doyle* and *Patricia Anne Pethick*, for appellant (appointed counsel for appeal).

*Edward Holm, Prosecuting Attorney*, and *Jon Tunheim, Deputy*, for respondent.

BRIDGEWATER, C.J. — Steven Fiser, appeals his conviction of two counts of sexual misconduct with a minor. We affirm.

Steven Fiser was a teacher at Yelm High School during the school years of 1994 and 1995. During this time, A.G. was a junior at Yelm High School. She was sixteen years old when the academic year began. In the beginning of her junior year, A.G. was a student in Fiser's history class. At the end of her history class, A.G. became involved in girl's fast pitch softball. The season for girl's fast pitch softball started around the end of February 1995. Fiser was her coach on the softball team.

Fiser invited A.G. to baby-sit at his house in January of 1995. On that evening Fiser asked if he could kiss her. Fiser kissed her and then engaged in sexual intercourse with her.

After this first event of sexual intercourse, A.G. considered her relationship with Fiser to have changed from a teacher/student to a boyfriend/girl friend relationship. She was flattered by this relationship with Fiser, an admired teacher. She had private access almost every day to Fiser, who was her teacher and coach. Frequently during these private times, they would talk about school events, how Fiser was not happy in his marriage, and they would kiss. Fiser would issue her notes to excuse her from other classes so that she could come to his classroom during his "prep period." She also told the jury that she had access to Fis-

er's classroom, his desk, and his computer. Because of their relationship, she said she felt like she could ask Fiser for things she could not ask other teachers.

A.G. also testified about two more sexual episodes with Fiser that occurred in his classroom. First, toward the end of February 1995, A.G. performed oral sex on Fiser when she was working in his classroom on a school project, after Fiser wrote her a note to get out of class. Second, she told the jury the last time they had sexual intercourse was in Fiser's classroom, when he was getting ready for a noon. hour pep rally. She was helping Fiser get dressed as a cheerleader for the school event.

K.S. also testified at trial. She went to Tumwater High School during the school year of 1994 to 1995. K.S. told the jury that she did not know A.G. Fiser was a substitute for one of her classes during her freshman year, and he was her volleyball coach. K.S. testified that she also had a sexual relationship with Fiser, including oral sex. K.S. said that she would often go to Fiser's house and explain to her parents that she was baby-sitting. K.S. explained that their relationship eventually ended in February or March of 1995.

Fiser denied any sexual contact with either A.G. or K.S. Fiser explained that A.G. had no special privileges on the softball team or in his classroom. He acknowledged that A.G. took a U.S. history course from him that ended January 27, 1995, and that he gave her a "C-" grade.

On February 9, 1998, Fiser was charged by information with two counts of sexual misconduct with a minor in the first degree based on the two episodes of sexual intercourse between Fiser and A.G. in the classroom at Yelm High School. Before trial, the defendant filed a motion to exclude the testimony of K.S. under ER 404(b). The motion was heard during a pretrial hearing on April 29, 1999. The State argued that the evidence should be admitted under ER 404(b) for the purpose of determining a common plan or scheme that would corroborate A.G.'s testimony or for the purpose of determining credibility. Because the two girls

did not know each other and because their descriptions of Fiser's behavior were similar, the State argued that K.S.'s testimony refuted Fiser's claim that A.G. fabricated the allegation.

The court denied the motion to exclude the testimony. The court ruled that K.S. could testify for the limited purposes of showing that Fiser had a common purpose or plan and for determining A.G.'s credibility in ER 404(b). Before K.S. testified, the court instructed the jury to consider her testimony only for purposes of determining whether or not there was a common purpose, plan or circumstances involving the abuse of a supervisory position for a particular purpose. At the end of trial without objection from Fiser, the court instructed the jury before deliberation that they should consider K.S.'s testimony only for the purpose of judging A.G.'s credibility.

The jury found Fiser guilty of two counts of sexual misconduct with a minor in the first degree. Fiser was sentenced within the standard range. The court also imposed special conditions that Fiser appeals.

### Sufficient Evidence of Abuse of Supervisory Position

Fiser first challenges his conviction on the sufficiency of the evidence for the two counts of sexual misconduct with a minor. Evidence is sufficient to support a conviction if, viewed in the light most favorable to the prosecution, it permits any rational trier of fact to find the essential elements of the crime beyond a reasonable doubt. *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). "A claim of insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom." *Id.* at 201. Circumstantial evidence and direct evidence are equally reliable. *State v. Delmarter*, 94 Wn.2d 634, 638, 618 P.2d 99 (1980). In determining whether the necessary quantum of proof exists, the reviewing court need not be convinced of the defendant's guilt beyond a reasonable doubt, but only that substantial evidence supports the State's case. *State v. Galisia*, 63 Wn. App. 833,

838, 822 P.2d 303, *review denied*, 119 Wn.2d 1003 (1992). Credibility determinations are for the trier of fact and are not subject to review. *State v. Camarillo*, 115 Wn.2d 60, 71, 794 P.2d 850 (1990). This court must defer to the trier of fact on issues of conflicting testimony, credibility of witnesses, and the persuasiveness of the evidence. *State v. Walton*, 64 Wn. App. 410, 415-16, 824 P.2d 533, *review denied*, 119 Wn.2d 1011 (1992).

Fiser was charged with two counts of sexual misconduct with a minor in the first degree. The Revised Code of Washington defines this crime:

> (1) A person is guilty of sexual misconduct with a minor in the first degree when the person has, or knowingly causes another person under the age of eighteen to have, sexual intercourse with another person who is at least sixteen years old but less than eighteen years old and not married to the perpetrator, if the perpetrator is at least sixty months older than the victim, is in a significant relationship to the victim, and abuses a supervisory position within that relationship in order to engage in or cause another person under the age of eighteen to engage in sexual intercourse with the victim.

RCW 9A.44.093(1). Here, Fiser challenges the sufficiency of the evidence on the element of abuse of supervisory position. Although no Washington cases have analyzed the element of abuse of supervisory position in this criminal statute, the statute provides a definition:

> "Abuse of a supervisory position" means a direct or indirect threat or promise to use authority to the detriment or benefit of a minor.

RCW 9A.44.010(9).

In this case, the trial court found that the evidence of benefits that A.G. received from Fiser were sufficient to show that Fiser abused his supervisory position with indirect "promises" to use his authority to benefit A.G. There is no evidence of threats in the record. Fiser contends that there is insufficient evidence to support a finding of a direct or indirect promise from him to A.G. Fiser urges this

court to determine the element of abuse of supervisory position by interpreting "promise" in the same manner that civil case law has interpreted and defined promise. Fiser submits that "promise" means "an undertaking, however expressed, either that something shall happen, or that something shall not happen, in the future," and that a promise is "an express undertaking or agreement to carry the purpose into effect." Fiser essentially argues that only evidence of an express or direct promise will satisfy this element and ignores that the statute provides for indirect promises. We decline to apply Fiser's unrelated civil law definitions of promise to this criminal statute.

■ ■ The obligation of this court is to give effect to the intent of the Legislature. Review begins with the plain language of the statute. *Lacey Nursing Ctr., Inc. v. Department of Revenue*, 128 Wn.2d 40, 53, 905 P.2d 338 (1995). The statute explicitly states that "abuse of supervisory position" means "a direct or indirect threat or promise to use authority to the detriment or benefit of a minor." Additionally, this statute defines the "significant relationship" element as "a situation in which the perpetrator is" a "person who undertakes the responsibility, professionally or voluntarily, to provide education, health, welfare, or organized recreational activities principally for minors[.]" RCW 9A.44.010(8)(a). From the plain language of the statute and these definitions, it is evident that one of the legislative purposes was to criminalize sexual intercourse between teachers and their students. But the Legislature added the language concerning direct or indirect threats or promises to use authority for the detriment or benefit of the minor. This case does not involve any threats or any direct promises (e.g. "You will get good grades . . . you will play on the varsity"). This case centers around whether there was in indirect promise to use Fiser's authority to benefit A.G.

■ In this case, there is sufficient evidence that A.G. received several benefits from Fiser while she was in a sexual relationship with him. She stated that she had

private access almost everyday to Fiser, who was her teacher and coach. She explained that she considered Fiser to be her boyfriend. A.G. also told the jury that she had access to Fiser's classroom and his computer. Because of their relationship, she said she felt like she could ask Fiser for things she could not ask other teachers. She explained that Fiser got her out of other classes to come visit him. Thus, A.G.'s testimony provides evidence that she had special access to Fiser, his classroom and computer, that Fiser would help her get out of other classes, and that she was flattered by the relationship with her teacher. He was an authority figure in the school, and she benefited by having a special relationship with him that she did not have with other teachers. She had the benefit of his authority—in other words, she became the "teacher's pet." The special privileges she enjoyed ceased when the sexual relationship ceased. This also indicates that an implied promise of special privilege existed. We hold in cases where a school teacher is charged with sexual misconduct with a minor where the minor gains actual benefits in school during a sexual relationship that an indirect promise for these benefits can be implied.

This evidence shows that A.G. received benefits from Fiser while she was having a sexual relationship with him. These repeated minor benefits that A.G. received show that an indirect promise existed that Fiser would use his authority for A.G.'s benefit. Accordingly, there was sufficient evidence to find that Fiser abused his supervisory position.

A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.

HOUGHTON and ARMSTRONG, JJ., concur.

Review denied at 141 Wn.2d 1023 (2000).