2013 JUL 29 AM 10: 29



# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

STATE OF WASHINGTON, )
                               )    No. 68508-2-I
        Respondent, )

                               )    DIVISION ONE
        v. )

                               )    UNPUBLISHED OPINION
ELIJAH MAYFIELD, III, )

                               )
        Appellant. )    FILED: July 29, 2013
                               )

GROSSE, J. — The erroneous admission of evidence is harmless if it did not materially affect the outcome of the trial. Here, the evidence of guilt, including Elijah Mayfield's confession, was overwhelming. Consequently, any error in the admission of identification testimony and other evidence was harmless. Defense counsel's failure to object to alleged prosecutorial misconduct precludes our review, and the arguments in Mayfield's statement of additional grounds for review are without merit. We therefore affirm.

## FACTS

In early 2009, local stores were experiencing numerous thefts of high-priced personal care items, including electric toothbrushes, replacement brush heads, and razors. At Safeway stores, employees began marking the packages of frequently stolen items with an ultraviolet pen, recording the employee's initials, the date, and the store number. Each day, the employees would check the shelves and sales records to determine the time period when items disappeared without being purchased. Several police departments cooperated in an investigation that eventually identified Elijah Mayfield as a suspect.

On March 8, 2009, Teri Pentin, the general merchandise manager for the Newcastle Safeway, discovered that two Oral B toothbrushes and two Sonicare replacement brushes were missing. Pentin confirmed that the items had not been sold and determined that they had gone missing sometime after 2:00 p.m. the previous day. Gene Blahato, Safeway's organized retail crime investigator, reviewed the video from the store's security cameras. He observed Mayfield enter the store, remove items from the shelves, and conceal them in his pants. Mayfield then exited the store without paying for the items.

Tracy Li, the general merchandise manager at the Factoria Safeway, discovered items missing from her section on March 12, 2009, March 27, 2009, and April 8, 2009. Li and Blahato reviewed the security camera videos for these dates, which showed Mayfield shoplifting various items on each date, including Sonicare replacement brush heads, boxes of laxatives, Rogaine, and Oral-B toothbrushes.

Based on their investigations, Bellevue Police Department Detective James Lindquist and King County Sheriff's Office Detective Jeffrey Johnson interviewed Mayfield at the Issaquah Jail on May 11, 2009. After being advised of his Miranda[1] rights, Mayfield agreed to make a recorded statement. Mayfield admitted driving to the Factoria Safeway on March 12, March 27, and April 8, 2009, and taking various items, including Sonicare and Oral-B toothbrushes and toothbrush replacement heads. He explained that he took the items from the shelves and concealed them in

---

[1] Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

his pants before leaving. Mayfield then drove to the Renton area and sold the items for cash and cocaine.

Mayfield also agreed to give a statement to Snohomish County Sheriff's Office Detective Collin Ainsworth on August 6, 2009. Mayfield told Ainsworth that he had an arrangement with Mark Ostheller to provide stolen retail products, including electric toothbrushes, toothbrush replacement heads, and razors. Mayfield provided the items that Ostheller requested in exchange for cash. Mayfield said the arrangement had lasted three years and that he had dealt exclusively with Ostheller for this period.

The State charged Mayfield and Ostheller with multiple counts of trafficking in stolen property. Ostheller pleaded guilty to ten counts of trafficking in stolen property in the second degree and agreed to be a witness for the State. The State then tried Mayfield on four counts of trafficking in stolen property in the first degree, based on the thefts at the Newcastle and Factoria Safeway stores.

At trial, David Pankratz testified that he purchased items from various sources and resold them on the Internet. For several years, Pankratz bought items from Mark Ostheller. At some point, Pankratz became suspicious about the low prices for Ostheller's items and reported his concerns to the FBI (Federal Bureau of Investigation). Pankratz eventually came into contact with Blahato and Detective Ainsworth. At their request, Pankratz photographed certain items that he purchased from Ostheller. Some of the photographs documented markings with the ultraviolet pen from the Newcastle and Factoria Safeway stores.

Ostheller testified that he purchased items from Mayfield for about three years. At first, Ostheller met Mayfield in a parking lot and gave him cash in exchange for the

items, which included electric toothbrushes and razors. Eventually, Ostheller rented a storage space and gave Mayfield a key. Mayfield would then place the items in the storage space and take a prearranged amount of the cash that Ostheller had left. Ostheller sold many of the items that Mayfield supplied to David Pankratz.

The jury listened to the recording of Mayfield's May 11, 2009 statement admitting to the thefts. The jury also watched the video recordings of the three thefts from the Factoria Safeway. Blahato testified that he prepared a copy of the video recording of the March 7, 2009 theft from the Newcastle Safeway and transferred it to disc. After reviewing the copy, he gave the disc to the police. At some point, that disc became corrupted and unviewable, and the recording was not available at trial.

Mayfield testified that when he gave his statements to police officers, he was not certain about the dates. He conceded that he was familiar with the Factoria Safeway, but claimed he was "not quite sure" about the Newcastle Safeway. He denied ever stealing boxes of Rogaine because they were too big to fit into his pants. Mayfield repeatedly admitted committing the three thefts depicted in the Factoria video recordings and affirmed that he was "pleading guilty, actually" to those charges because he had a "guilty conscience" and wanted "everybody to know, I was addicted to drugs and gambling." During cross-examination, Mayfield acknowledged multiple prior convictions for theft and robbery.

The jury found Mayfield guilty as charged of four counts of trafficking in stolen property in the first degree, and the court imposed a 43-month standard range term.

## ANALYSIS

Mayfield contends that the trial court violated his right to a fair trial when it erroneously admitted evidence about the general scope of Safeway's damages from shoplifting. He argues that the evidence was irrelevant, designed to evoke an emotional response from the jury, and amounted to improper victim impact evidence.

Without objection, the deputy prosecutor asked Blahato about the "impact" that "professional shoplifting had on Safeway stores." Without objection, Blahato answered that professional shoplifting had "a very damaging effect" on the stores that encompassed both financial consequences and concerns about the quality and safety of the merchandise. At the conclusion of Blahato's answer, defense counsel objected on the basis of relevance. The trial court did not rule on the objection, and the deputy prosecutor stated that he would "pinpoint the question." The trial court overruled defense counsel's objection when Blahato testified that Safeway's shoplifting losses involved millions of dollars. But the court sustained an objection to the deputy prosecutor's question about "who pays for that in the long run."

Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence . . . more probable or less probable than it would be without the evidence."[2] In order to convict Mayfield of trafficking in stolen property in the first degree, the State had to prove that he knowingly possessed stolen property with the intent to sell it to another or knowingly sold stolen property to another.[3] As the State

---

[2] ER 401.
[3] See RCW 9A.82.050(1); 9A.82.010(19).

concedes, the general extent of Safeway's losses from shoplifting was irrelevant to that determination.

The State suggests that the evidence was relevant to counter the defense strategy of portraying Mayfield as no more culpable than Ostheller, whom defense counsel characterized as "the brains behind the operation." But Safeway's general shoplifting losses were no more relevant for this issue than for the elements of the offense.

Under the facts of this case, however, any error was harmless. The erroneous admission of evidence is not prejudicial unless, "'within reasonable probabilities, had the error not occurred, the outcome of the trial would have been materially affected.'"[4] The fact that Safeway was the victim of a significant organized retail shoplifting operation was already before the jury in unchallenged testimony describing the scope of Safeway's efforts to investigate the thefts. Moreover, contrary to Mayfield's assertions, evidence that Safeway and other corporations lose millions of dollars to theft likely came as no surprise to the jurors, reducing any likelihood that the evidence resulted in a prejudicial and unfair emotional appeal.

Finally, the jury saw video recordings of Mayfield committing the thefts on which three of the four charges were based. Mayfield repeatedly testified that he committed those three offenses. He expressed some uncertainty that he had been in the Newcastle Safeway, but he never denied committing the offense, and the jury heard his recorded statement admitting that he took specific items from the

---

[4] State v. Gresham, 173 Wn.2d 405, 433, 269 P.3d 207 (2012) (quoting State v. Smith, 106 Wn.2d 772, 780, 725 P.2d 951 (1986)).

Newcastle Safeway on March 7, 2009. The evidence of guilt was overwhelming; under the circumstances, there was no reasonable likelihood that the challenged evidence affected the outcome of the trial.

Mayfield contends that the deputy prosecutor committed reversible misconduct during closing argument and rebuttal closing argument by improperly urging the jury to find him guilty based on the amount of Safeway's general shoplifting damages. He argues that comments about the scope of Safeway's efforts to mark and track frequently stolen items, the fact that other businesses faced the same general shoplifting problems, and the jury's "right to be angry" about the amount of money that Mayfield earned by selling the stolen items persuaded the jury to decide the case based on an emotional response to the general shoplifting problem rather than on the evidence.

A defendant claiming prosecutorial misconduct bears the burden of establishing that the challenged conduct was both improper and prejudicial.[5] Prejudice occurs only if "there is a substantial likelihood the instances of misconduct affected the jury's verdict."[6] We review misconduct claims in the context of the total argument, the evidence addressed, the issues in the case, and the jury instructions.[7] If the defendant fails to object, however, we will not review the alleged error unless the defendant demonstrates that the misconduct was "so flagrant and ill intentioned

---

[5] State v. Cheatam, 150 Wn.2d 626, 652, 81 P.3d 830 (2003).
[6] State v. Pirtle, 127 Wn.2d 628, 672, 904 P.2d 245 (1995).
[7] State v. Boehning, 127 Wn. App. 511, 519, 111 P.3d 899 (2005).

that no curative instructions could have obviated the prejudice engendered by the misconduct."[8]

Here, defense counsel failed to object to any of the alleged improper comments during closing argument. Mayfield claims that any objection or request for a curative instruction would have been futile because the trial court overruled his objection to Blahato's testimony that Safeway's general loss from shoplifting was "millions" of dollars. But Mayfield fails to note that immediately after overruling that objection, the trial court sustained defense counsel's objection when the deputy prosecutor sought to enlarge the scope of the questioning by asking "who pays for [shoplifting] in the long run?"

Nothing in the record suggests that additional objections during closing argument or a request for an appropriate curative instruction would have been futile. The challenged comments were not so egregious as to engender incurable prejudice.[9] Mayfield fails to show that a timely objection and curative instruction would not have negated the potential prejudice. His claim of prosecutorial misconduct therefore fails, and "our analysis need go no further."[10]

Mayfield's contention that the deputy prosecutor violated a pre-trial order by asking Ostheller how much he paid Mayfield in 2008 is without merit. Ostheller responded, "A hundred thousand." But Mayfield raised no objection to the question or the answer. Moreover, during cross-examination of Detective Ainsworth, defense

---

[8] State v. Belgarde, 110 Wn.2d 504, 507, 755 P.2d 174 (1988).
[9] See State v. Emery, 174 Wn.2d 741, 764, 278 P.3d 653 (2012).
[10] Emery, 174 Wn.2d at 764.

counsel elicited Ainsworth's confirmation that the trafficking operation was "[f]airly lucrative to Mr. Ostheller" and "[n]ot so lucrative to Mr. Mayfield." Defense counsel's cross-examination clearly opened the door to Ostheller's testimony. Mayfield fails to demonstrate any error.

Mayfield next contends that the trial court erred in admitting Blahato's testimony identifying him in the security camera videos. He argues that the testimony improperly usurped the jury's role as finder of fact.

Prior to trial, Mayfield moved to exclude Blahato's proposed testimony identifying Mayfield as the shoplifter in the security video from Newcastle Safeway. As Blahato explained, the security video was not available at the time of trial. The trial court ruled that the testimony was admissible because Blahato was essentially testifying as a witness to what he had seen. The court ruled that defense counsel could explore any deficiencies in the foundation for Blahato's testimony during cross-examination. Defense counsel did not address the three security camera videos from the Factoria Safeway.

At trial, Blahato described what he had seen in the Newcastle Safeway video. The deputy prosecutor then played the Factoria videos for the jury. Without objection, Blahato described what was occurring on the March 12, 2009 video. At the conclusion of his testimony about the March 27, 2009 video, defense objected "to the narrative . . . . The video speaks for itself." The trial court overruled the objection, noting that defense counsel could cross-examine Blahato about the accuracy of his observations. Blahato then testified about the April 8, 2009 video.

Mayfield contends that the trial court erred in permitting Blahato to identify him as the shoplifter in the surveillance videos. He argues that because Blahato had not met Mayfield before trial, he was in no better position than the jury to determine whether Mayfield was the person in the videos.

A witness's testimony must be "based on personal knowledge, and a lay witness may give opinion testimony if it is (1) rationally based on the perception of the witness and (2) helpful to a clear understanding of the testimony or the fact in issue."[11] Opinion testimony identifying individuals in surveillance photographs runs "'the risk of invading the province of the jury.'"[12] But such opinion testimony is admissible as long as "'there is some basis for concluding that the witness is more likely to correctly identify the defendant from the photograph than is the jury.'"[13]

The security video from the Newcastle Safeway malfunctioned and was not available for trial. Mayfield argues that the trial court erred in permitting Blahato to describe what he saw on the video because Blahato had not seen him in person before the day of the trial. When asked about this during cross-examination, Blahato explained that he had "seen Mr. Mayfield on prior occasions." Defense counsel did not make any further attempt to challenge the basis for Blahato's identification. On the record before this court, Mayfield has not identified any error in the admission of Blahato's testimony about the Newcastle video.

---

[11] State v. George, 150 Wn. App. 110, 117, 206 P.3d 697 (2009) (citing ER 602, 701).

[12] George, 150 Wn. App. at 118 (quoting United States v. LaPierre, 998 F.2d 1460, 1465 (9th Cir. 1993)).

[13] George, 150 Wn. App. at 118 (quoting State v. Hardy, 76 Wn. App. 188, 190, 884 P.2d 8 (1994), aff'd, State v. Clark, 129 Wn.2d 211, 916 P.2d 384 (1996)).

Mayfield's challenge to testimony about the three Factoria videos also fails. Defense counsel's belated objection involved only Blahato's "narrative" description of what was occurring in the videos. Counsel did not challenge Blahato's identification of Mayfield as the individual in the videos. Under the circumstances, the objection was not sufficiently specific to alert the trial court to the argument that Mayfield is raising on appeal.[14] Moreover, defense counsel's failure to object on this basis was not surprising because Mayfield's identity was not disputed, and he repeatedly acknowledged that fact during his testimony. Consequently, even if Blahato's identification testimony was erroneously admitted, the error was harmless.

Mayfield argues that cumulative error denied him the right to a fair trial. Because any error here was clearly harmless, the cumulative error doctrine does not apply.

In his statement of additional grounds for review, Mayfield first contends that the evidence was insufficient to support his conviction for count I, the trafficking charge based on the March 7, 2009 theft at the Newcastle Safeway. He claims that he did not confess and that there was no evidence that he committed the theft. But Mayfield has failed to provide this court with a meaningful explanation of the alleged error.[15]

---

[14] See State v. Guloy, 104 Wn.2d 412, 422, 705 P.2d 1182 (1985) (objection must be sufficiently specific to preserve claim of error for appeal).

[15] See RAP 10.10(c) (appellate court will not consider statement of additional grounds for review "if it does not inform the court of the nature and occurrence of alleged errors").

In his recorded statement, Mayfield admitted stealing specific items from the Newcastle Safeway and then selling them for cash or drugs. Viewed in the light most favorable to the State, that evidence was sufficient to permit the jury to find beyond a reasonable doubt that Mayfield knowingly possessed stolen property with the intent to sell it to another or knowingly sold stolen property to another.[16] The evidence was therefore sufficient to support the conviction for trafficking in stolen property in the first degree as charged for the March 7, 2009 incident. To the extent that Mayfield may be alleging that his trial testimony repudiated the recorded confession, his contention raises a credibility issue that we cannot address on appeal.[17]

Mayfield's claim that the State proved only one count of trafficking is also without merit. He alleges that the State failed to establish that he sold the stolen items to Ostheller on four separate occasions. But viewed in the light most favorable to the State, Mayfield's confession established four separate occurrences of trafficking.

Finally, Mayfield contends that his convictions constituted the same criminal conduct for purposes of calculating his offender score. But because he failed to raise this issue at sentencing, he may not raise it for the first time on appeal.[18] And in any event, the claim fails. "'Same criminal conduct' . . . means two or more crimes that require the same criminal intent, are committed at the same time and place, and

---

[16] See RCW 9A.82.050(1); 9A.82.010(19).

[17] See State v. Fiser, 99 Wn. App. 714, 719, 995 P.2d 107 (2000) (an appellate court defers to the trier of fact on issues of credibility, conflicting testimony, and the persuasiveness of the evidence).

[18] State v. Jackson, 150 Wn. App. 877, 892, 209 P.3d 553 (2009).

involve the same victim."[19] Mayfield's offenses occurred on four separate days. The trial court properly counted them as separate offenses.

Affirmed.

_____

WE CONCUR:

_____          _____

---

[19] RCW 9.94A.589(1)(a).