IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 79577-5-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | |
| | ) | |
| I.V.S.-L., | ) | UNPUBLISHED OPINION |
| DOB: 06/05/2005 | ) | |
| Ref #: 18R020303 | ) | |
| Name Code: IN 60817115, | ) | |
| | ) | |
| Appellant. | ) | FILED: March 2, 2020 |

BOWMAN, J. — I.V.S.-L. was convicted of felony harassment under RCW 9A.46.020(1) and (2)(b)(ii) after a classmate overheard him discussing bringing a gun to "shoot up the school" and saw a Snapchat photograph I.V.S.-L. posted of himself holding what appeared to be a real gun. I.V.S.-L. appeals his conviction, arguing that the trial court lacked sufficient evidence to find him guilty of felony harassment. As an alternative, I.V.S.-L. argues that the trial court failed to prove he communicated a "true threat" as required under the First Amendment to the United States Constitution. We affirm.

FACTS

On March 27, 2018, thirteen-year-old I.W. was walking with classmates T.T. and Z.M. down a hallway at North Whidbey Middle School. Twelve-year-old I.V.S.-L. was

walking with his friends 10 to 15 feet ahead of them. I.W. overheard I.V.S.-L. tell his friends in a "normal tone of voice" that "he was going to get a gun" and "shoot up the school." At that time, I.W. believed I.V.S.-L. was joking and did not report his statement to school officials or police.

The following week on April 5, I.V.S.-L. took a photograph of himself posing with his finger on the trigger of what appeared to be a real gun. On the photograph, I.V.S.-L. superimposed the caption, "Look what I got." I.V.S.-L. posted the photograph to his Snapchat[1] "Story" and sent it as a direct message to I.W. When I.W. opened I.V.S.-L.'s message and saw the photograph, she connected it with I.V.S.-L.'s March 27 statement about bringing a gun to school. I.W. told her grandmother about I.V.S.-L.'s statement at school and his Snapchat photograph. I.W.'s grandmother contacted the Oak Harbor Police Department.

Officer Matthew Krysinski contacted I.W. by telephone to take her oral statement. I.W. sent a screenshot of I.V.S.-L.'s photograph to Officer Krysinski. In her written statement, I.W. wrote:

> My friends and I put [I.V.S.-L.'s statement that he was getting a gun and planning to take it to school and shoot up the school] off to the side and forgot about it because boys joke about it all the time and we didn[']t think it was such a big deal until I saw the photograph today . . . of [I.V.S.-L.] holding a hand gun and in the caption "look what I got."

I.W. told Officer Krysinski that the school shooting statement combined with the Snapchat photograph "bothered" her.

---

[1] Snapchat is a social media platform that allows users to take, edit, and share photographs or videos. Users can connect with others by adding them as "friends" through the application. If a user posts a photograph or video to their "Story," all of their friends may view the video or photograph for a short period before it disappears. If a user sends a direct message, only the friend who received the message can view it. Like a Story, after a friend opens a direct message, the message is only viewable for a short period before disappearing. A user can simultaneously post a photograph to their Story and send it as a direct message to multiple friends.

On April 6, Officer N. Padrta and Detective James Hoagland interviewed I.V.S.-L. at his home. After waiving his Miranda[2] rights, I.V.S.-L. told the officers that "he had not threatened to shoot up the school and that his friends had been asking him if he was going to shoot up the school and he had told them no." I.V.S.-L. admitted to posting the Snapchat photograph of himself holding a BB[3] gun. I.V.S.-L.'s father explained the BB gun belonged to an acquaintance they had recently visited in Mount Vernon. Detective Hoagland contacted the Mount Vernon Police Department who confirmed that the gun was a BB gun. Officer Krysinski testified that from his experience as a firearms instructor for the Oak Harbor Police Department, the gun in the photograph resembled a "real pistol." Detective Hoagland similarly testified that the gun I.V.S.-L. was holding did not look like a BB gun but rather a handgun similar to those carried by law enforcement.

On June 1, 2018, the State charged I.V.S.-L. with felony harassment (threat to kill) under RCW 9A.46.020(1) and (2)(b)(ii). During the bench trial, I.W. explained that on March 27, she heard I.V.S.-L. say he was going to "shoot up the school." She did not hear I.V.S.-L. or his friends say anything else and she did "not know the context of the conversation." I.W. said that I.V.S.-L. was not talking to her when he made the statement. I.W. testified that she did not immediately report I.V.S.-L.'s statement because she did not think it was a "big deal." I.W. testified boys "joke" about shooting up the school " 'all the time' " and she recalled two or three other boys making similar statements. However, I.W. testified that I.V.S.-L.'s April 5 photograph changed her view. She explained I.V.S.-L. "said that he was going to shoot up the school, but . . . I took it as a joke. But when I . . . got the picture, it like settled everything." I.W. tearfully

---

[2] Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).
[3] "Bullet ball" or "ball bearing."

stated she was "scared to go to school" because she thought that a shooting was actually going to happen and that she and other students would be I.V.S.-L.'s targets.

I.V.S.-L. testified that he knew I.W. but he did not know her well. He did not remember sending I.W. a direct message over Snapchat but he did remember posting the photograph of himself to his Story. I.V.S.-L. testified that the BB gun in his photograph looked like a real gun. When asked what he was trying to communicate with the photograph, I.V.S.-L. said, "I didn't try to communicate anything. I wasn't trying to do anything." I.V.S.-L. stated that he had never made threats to shoot up his school.

On January 28, 2019, the court convicted I.V.S.-L. of felony harassment under RCW 9A.46.020(1) and (2)(b)(ii). I.V.S.-L. appeals.

## ANALYSIS

I.V.S.-L. asserts the State provided insufficient evidence to prove all the elements of felony harassment under RCW 9A.46.020(1) and (2)(b)(ii). In the alternative, I.V.S.-L. argues this court should reverse his conviction on the basis that the trial court failed to prove his statements were "true threats" as required by the First Amendment.

### Sufficiency of the Evidence

I.V.S.-L. challenges the sufficiency of the evidence to support his conviction for felony harassment. A challenge to the sufficiency of the evidence is a question of constitutional law that we review de novo. State v. Rich, 184 Wn.2d 897, 903, 365 P.3d 746 (2016). The State bears the burden of proving all the elements of an offense beyond a reasonable doubt. U.S. CONST. amend. XIV; WASH. CONST. art. I, § 3; In re Winship, 397 U.S. 358, 363-64, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970). Sufficient evidence supports a conviction when, after reviewing evidence in the light most

4

favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 318-19, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). To affirm a conviction, we do not decide whether the accused was guilty beyond a reasonable doubt but rather whether substantial evidence supports the conviction. State v. Fiser, 99 Wn. App. 714, 718, 995 P.2d 107 (2000). This court defers to the fact finder on issues of conflicting testimony, witness credibility, and persuasiveness of the evidence. State v. Rodriquez, 187 Wn. App. 922, 930, 352 P.3d 200 (2015).

A defendant is guilty of harassment if without lawful authority, he or she "knowingly threatens" to "cause bodily injury immediately or in the future" to the person threatened or to "any other person," and "by words or conduct places the person threatened in reasonable fear that the threat will be carried out." RCW 9A.46.020(1)(a)(ii), (b). The offense is elevated to a felony if the defendant's threat is to "kill the person threatened or any other person." RCW 9A.46.020(2)(b)(ii).

I.V.S.-L. argues that the State provided no evidence that he knowingly made a threat to kill. Witness testimony from I.W., however, established that I.V.S.-L. told classmates he was going to "shoot up the school." Witness testimony and photographic evidence also established that I.V.S.-L. posed for and posted a photograph online holding what appeared to be a deadly weapon. The photograph depicts I.V.S.-L. with his finger on the trigger of the weapon and bears the caption, "Look what I got." Nine days later, I.V.S.-L. sent the photograph via direct message to I.W. We conclude that viewed in a light most favorable to the State, a rational trier of fact could find that I.V.S.-

L.'s combined actions constitute a knowing threat to kill I.W. and/or other students at her school.

I.V.S.-L. also asserts the State failed to prove that his threat placed I.W. in reasonable fear that the threat to kill would be carried out. While I.V.S.-L. concedes his words and actions made I.W. "scared to go to school," he argues I.W. had only a "generalized concern" that I.V.S.-L. would shoot up the school and she lacked a reasonable "fear that she or others were being threatened with death." Specifically, I.V.S.-L. claims that a threat to shoot with a gun does not constitute a threat to kill.

We disagree. The Washington Supreme Court has previously rejected this argument in State v. Kilburn, 151 Wn.2d 36, 59-60, 84 P.3d 1215 (2004):

> Kilburn argues that a threat to shoot does not constitute a threat to kill. . . . [A] rational trier of fact could find that the communication constituted a threat to kill, not just shoot and injure.

A rational trier of fact could find that I.V.S.-L.'s threat to shoot I.W. and/or other students at North Whidbey Middle School was a threat to kill.

We conclude that the State proved with sufficient evidence all of the elements of felony harassment under RCW 9A.46.020(1) and (2)(b)(ii).

### True Threat

I.V.S.-L. contends that this court should reverse his conviction because the trial court failed to prove his statements were "true threats" under the First Amendment.

Because RCW 9A.46.020 criminalizes speech, an appellate court must conduct an independent and "exceedingly cautious" review of the record to assess whether a defendant's speech was constitutionally protected under the First Amendment or an unprotected "true threat." Kilburn, 151 Wn.2d at 48-49. "A true threat is a statement

made in a context in which a reasonable person would foresee that the statement would be interpreted as a serious expression of an intention to inflict bodily harm upon or to take the life of another individual." State v. Williams, 144 Wn.2d 197, 218, 26 P.3d 890 (2001).

Washington courts apply an objective reasonable-person test to determine what constitutes a "true threat" and have repeatedly declined to apply a subjective intent test.[4] Kilburn, 151 Wn.2d at 43-44, 45; State v. Trey M., 186 Wn.2d 884, 893, 383 P.3d 474 (2016). The State need not prove that a defendant intended to carry out the threat; "[i]t is enough that a reasonable speaker would foresee that the threat would be considered serious." State v. Schaler, 169 Wn.2d 274, 283, 236 P.3d 858 (2010).

I.V.S.-L. communicated a true threat to I.W. that was not protected speech under the First Amendment. I.V.S.-L. testified at trial that he was not trying to "communicate anything" to I.W. A reasonable person in I.V.S.-L.'s position, however, would foresee that making a threat to "shoot up the school," followed closely in time with posting a photograph of himself bearing the words, "Look what I got" that depicts him holding what appears to be a real gun with his finger on the trigger, would communicate to others a serious threat of harm rather than a mere joke or playful display of a weapon. True threats are unprotected speech regardless of subjective intent because the government has an interest in protecting others from " 'the fear of violence, from the disruption that fear engenders, and from the possibility that the threatened violence will occur.' " State v. J.M., 144 Wn.2d 472, 478, 28 P.3d 720 (2001) (quoting R. A. V. v.

---

[4] Consequently, we do not address I.V.S.-L.'s argument that the State failed to prove a true threat under the subjective intent standard.

No. 79577-5-I/8

<u>City of St. Paul, Minn.</u>, 505 U.S. 377, 388, 112 S. Ct. 2538, 120 L. Ed. 2d 305 (1992)).

The evidence in this case established that I.V.S.-L. communicated a "true threat" to I.W.

Because sufficient evidence supports I.V.S.-L.'s conviction for felony harassment and I.V.S.-L. communicated a "true threat" to I.W., we affirm.

WE CONCUR:

8